IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JUSTIN WATSON,

        Plaintiff,

        v.

AMERICAN NATIONAL
PROPERTY AND CASUALTY
COMPANY,

        Defendant.

15cv0888
**ELECTRONICALLY FILED**

**MEMORADUM OPINION ON PLAINTIFF'S PETITION FOR REMAND**

Before the Court is Plaintiff's Petition for Remand requesting that this Court remand the instant class action lawsuit to Pennsylvania's Court of Common Pleas of Fayette County. Doc. no. 20. Plaintiff contends this Court does not have subject matter jurisdiction. Id. Defendant opposes Plaintiff's Petition for Remand and, in its Brief in Opposition, defends its removal of this case, primarily arguing that federal jurisdiction is appropriate because this case falls squarely within the Class Action Fairness Act of 2005 ("CAFA"). Doc. no. 34. For the reasons set forth below, the Court will deny Plaintiff's Petition for Remand.

**I.    CAFA Requirements**

The relevant jurisdictional requirements as they relate to CAFA are as follows:

District Courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which: (1) any member of a class of plaintiffs is a citizen of a state different from any defendant; (2) any member of a class of plaintiffs is a foreign state or a citizen or subject of a

foreign state and any defendant is a citizen of a state; or (3) any member of a class of plaintiffs is a citizen of a state and any defendant is a foreign state or a citizen or subject of a foreign state. 28 U.S.C. § 1332(d)(2).

The above statutory subsection does not apply to any class action in which the number of members of all proposed plaintiff classes in the aggregate is less than 100. 28 U.S.C. §1332(d)(5)(B).

Simply put, CAFA confers on district courts "original jurisdiction of any civil action" in which three requirements are met: (1) an amount in controversy that exceeds $5,000,000, as aggregated across all individual claims; (2) minimally diverse parties; and (3) that the class consist of at least 100 or more members ("numerosity requirement"). *Judon v. Travelers Property Cas. Co. of America*, 773 F.3d 495, 500 (3d Cir. 2014), *quoting Standard Fire Ins. Co. v. Knowles*, —— U.S. ——, 133 S.Ct. 1345, 1347 (2013).

## II.     Burden of Proof – Petition to Remand

In order to determine whether the CAFA jurisdictional requirements are satisfied, a court evaluates allegations in the complaint and a defendant's notice of removal. *Judon*, 773 F.3d at 500, *citing Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007); *Morgan v. Gay*, 471 F.3d 469, 474 (3d Cir. 2006). "The proper test in a CAFA removal action depends on the nature of the jurisdictional facts alleged and whether they are in dispute." *Judon*, 773 F.3d at 500.

Before CAFA was effective, the United States Court of Appeals for the Third Circuit, in *Samuel-Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 396 (3d Cir. 2004), held that a party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court.

In *Frederico, supra.*, a post-CAFA case, the Court of Appeals for the Third Circuit held that in a case where removal to a federal court is predicated upon the application of CAFA, "the party seeking to remove the case to federal court bears the burden to establish that the amount in controversy is satisfied." *Frederico,* 507 F.3d at 193 quoting, *Morgan,* 471 F.3d at 473.

The Court addressed this issue in detail, and noted as follows:

*Samuel-Bassett* [*v. Kia Motors America, Inc.*, 357 F.3d 392 (3d Cir. 2004)], decided prior to the enactment of CAFA, articulated a template for addressing subject matter jurisdiction challenges by examining two Supreme Court cases: *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), and *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

In *Red Cab*, the plaintiff filed suit in state court and, in response to defendant's removal of the case, subsequently reduced its claim below the requisite amount. 303 U.S. at 285, 58 S.Ct. 586 (holding that "events occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached"). The Supreme Court articulated what has become known as the "legal certainty test," observing that when a case is brought in federal court, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Id*. at 288, 58 S.Ct. 586. The case will be dismissed only if, "from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount." *Id*. at 289, 58 S.Ct. 586.

In *McNutt*, the plaintiff brought suit in federal court and defendant contested the assertion in the complaint that the requisite matter in controversy was involved. *McNutt*, 298 U.S. at 179–180, 56 S.Ct. 780. The Supreme Court held: "[T]he court may ... insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence." *Id*. at 189, 56 S.Ct. 780.

This Court, in *Samuel-Bassett*, disentangled the "legal certainty" and "preponderance of the evidence" approaches of *McNutt* and *Red Cab* by distinguishing them on the grounds of whether the jurisdictional dispute surrounded factual matters: "In [*McNutt*], although a challenge to the amount in controversy had been raised in the pleadings, no evidence or findings in the trial court addressed the issue. In that respect *Red Cab* differs because these factual findings had been made." *Samuel-Bassett*, 357 F.3d at 397. As a result, in the

3

many cases where disputes over factual matters are involved, the *McNutt* preponderance of the evidence standard is appropriate for resolving the dispute. By contrast, in those cases "when relevant facts are not in dispute or findings have been made," the district court should adhere to the "legal certainty test cited in such cases as *Meritcare* [*Inc. v. St. Paul Mercury Insurance Co.*], 166 F.3d 214 [(3d Cir.1993)]; *Packard* [*v. Provident Nat'l Bank* ], 994 F.2d 1039[ (3d Cir.1993) ]; *Bloom v. Barry*, 755 F.2d 356 (3d Cir.1985); and *Nelson v. Keefer*, 451 F.2d 289 (3d Cir.1971)." *Samuel–Bassett*, 357 F.3d at 398. Under the legal certainty test, as it appears in those cases, "[w]hen it appears to a legal certainty that the plaintiff was never entitled to recover the jurisdictional amount, the case must be dismissed." *Packard*, 994 F.2d at 1046; see also *Meritcare*, 166 F.3d at 217 ("When it appears to a legal certainty that the plaintiff was never entitled to recover the minimum amount set by Section 1332, the removed case must be remanded...."); *Bloom*, 755 F.2d at 358 ("[T]he court properly applied the 'legal certainty' test with respect to the jurisdictional amount announced in [*Red Cab*]."); *Nelson*, 451 F.2d at 293 (citing *Red Cab* for the proposition that to determine "good faith," "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal") (citing *Jaconski v. Avisun Corp.*, 359 F.2d 931, 934 (3d Cir.1966)).

As Judge Norma L. Shapiro observed in *Valley v. State Farm* Fire and Cas. Co.:

> All these cases [cited by *Samuel-Bassett*] cite to and rely upon the *Red Cab* legal certainty standard.... The legal certainty standard established by the Court of Appeals in *Samuel-Bassett* is the same standard established by the Supreme Court in *Red Cab*.
>
> Under *Red Cab*, a case must be dismissed or remanded if it appears to a legal certainty that the plaintiff cannot recover more than the jurisdictional amount of $75,000. The rule does not require the removing defendant to prove to a legal certainty the plaintiff can recover $75,000 – a substantially different standard. This reading of the legal certainty test is supported by *Meritcare*, *Bloom*, *Packard*, and *Nelson*. None of these cases require the defendant to prove the jurisdictional amount to a legal certainty in order to remain in federal court.

504 F.Supp.2d 1, 3-4 (E.D. Pa. 2006) (internal citations omitted).

Two years after *Samuel-Bassett*, this Court was presented with our first class action diversity removal case brought under CAFA, *Morgan v. Gay*, 471 F.3d at 469. *Morgan* came to our Court on an appeal from a district court order granting plaintiff's motion to remand to state court, on the grounds that the amount in controversy required to support a diversity action under 28 U.S.C. § 1332(d)(2), an amount in excess of $5 million, had not been demonstrated.4 Id. at 471. In *Morgan*, the plaintiff expressly limited the amount in controversy to an amount

lower than the jurisdictional requirement, stating in the complaint that "the total amount of such monetary relief for the class as a whole shall not exceed $5 million in sum or value." *Id*.

The claims in *Samuel-Bassett*, *Red Cab* and *McNutt* did not involve such a limitation. The different circumstances in *Morgan* called for a different approach to determine whether there was federal jurisdiction. Against the well-established backdrop that the plaintiff is the master of her own claim and thus "may limit [her] claims to avoid federal subject matter jurisdiction," the panel concluded that where the plaintiff so limits her claim, "[t]he party wishing to establish subject matter jurisdiction has the burden to prove to a legal certainty that the amount in controversy exceeds the statutory threshold." *Id*. at 474. This "legal certainty" standard differs from that of the cases cited by *Samuel-Bassett*. In those cases, the challenger to subject matter jurisdiction had to prove, to a legal certainty, that the amount in controversy could not exceed the statutory threshold. *See Packard*, 994 F.2d at 1046; *Meritcare*, 166 F.3d at 217; *Bloom*, 755 F.2d at 358; *Nelson*, 451 F.2d at 293.

In *Morgan*, by contrast, we held that where the plaintiff expressly limits her claim below the jurisdictional amount as a precise statement in the complaint, applying the maxim that the plaintiff is the master of her own complaint, the proponent of the federal subject matter jurisdiction is held to a higher burden; that is, the proponent of jurisdiction must show, to a legal certainty, that the amount in controversy exceeds the statutory threshold.

Thus, *Morgan* does not conflict with the reasoning and holding of *Samuel-Bassett*. The *Samuel-Bassett* dichotomy still paves the basic procedural avenue: "In many cases ... disputes over factual matters may be involved. In resolving those issues, the *McNutt* preponderance of the evidence standard would be appropriate. Once the findings of fact have been made, the court may determine whether *Red Cab's* 'legal certainty' test for jurisdiction has been met." 357 F.3d at 398.

*Morgan* provided a more complete roadmap. First, it added a precept that may be applied to all diversity class actions that have been removed: "Because 'the complaint may be silent or ambiguous on one or more of the ingredients needed to calculate the amount in controversy,' '[a] defendant's notice of removal serves the same functions as the complaint would in a suit filed in federal court.' " *Morgan*, 471 F.3d at 474 (quoting *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir.2005)). Second, *Morgan* erected guideposts in those cases where the plaintiff's complaint specifically (and not impliedly) and precisely (and not inferentially) states that the amount sought in a class action diversity complaint "for the class as a whole shall not exceed $5 million in sum or value." *Id*. at 471. In such cases "[t]he party wishing to establish subject matter jurisdiction has the burden to prove by a legal certainty that the amount in controversy exceeds the statutory threshold." *Id*.

5

The distinction between a case governed by *Morgan* and a case governed by *Red Cab* and *Samuel-Bassett* is crystal clear. *Morgan* applies where the complaint specifically avers that the amount sought is less than the jurisdictional minimum. There, a defendant seeking removal must prove to a legal certainty that plaintiff can recover the jurisdictional amount. By contrast, *Samuel-Bassett* applies where the plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum. There, the case must be remanded if it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount.

*Frederico,* 507 F.3d at 193-97.

At the removal stage of an action, a jurisdictional fact in question may be "disputed" or "contested" in the pleadings. *McNutt*, 298 U.S. at 189–90. In *Frederico*, the defendant removed the matter to federal court claiming it had original jurisdiction under CAFA based on the facts set forth by the plaintiff in her complaint; thus, the *Frederico* case involved facts which were undisputed. 507 F.3d at 197-98.

In *Judon,* the Court of Appeals for the Third Circuit commented on these undisputed facts present in the *Frederico* case:

> Because the defendant's "argument for jurisdiction [was] based on allegations made initially by" the plaintiff, we determined that the "relevant facts [were] not expressly in dispute between the parties." [*Frederico*, 507 F.3d at 198]. We further concluded that the case did not present a situation where the court should "'still insist that the jurisdictional facts be established or the case be dismissed'" and "'demand that the party alleging jurisdiction justify his allegations by a preponderance of the evidence.'" *Id*. (quoting *McNutt*, 298 U.S. at 189, 56 S.Ct. 780).
>
> Therefore, we applied *Red Cab's* legal certainty test to the facts alleged by the plaintiff in her complaint and incorporated by the defendant in its notice of removal. *Id.* We found that the plaintiff's compensatory and punitive damages totaled $1,722.84, and that the applicable attorney's fees, using the Federal Judicial Center's median percentage recovery, could amount to $516.85, bringing the plaintiff's "total damages to $2,239.69." *Id*. at 199. The plaintiff had alleged that there were "tens of hundreds of thousands" of class members. Using these two figures, we divided $5,000,000 by $2,239.69 that produced "a requisite class size of 2,233," which was well within the plaintiff's allegations regarding the

6

number of class members. *Id.* This analysis left us satisfied that the *Red Cab* legal
certainty test was met. *Id.*

*Judon*, 773 F.3d at 503.

The overall outcome of this lengthy historical case law analysis was summarized by the Court of Appeals in *Judon* as follows: (1) [w]here there are contested facts related to jurisdiction, the preponderance of the evidence standard from *McNutt* applies, unless a district court has previously evaluated evidence and made factual findings[;] (2)[o]nce findings of fact have been made, the court may determine whether *Red Cab's* 'legal certainty' test for jurisdiction has been met[;] and (3) *Red Cab's* legal certainty test also applies where the jurisdictional facts are not contested or the amount in controversy is "determined in whole or in part by applicable law. In applying *Red Cab*, the preponderance of the evidence standard [has] no utility and we ask whether it is clear to a legal certainty that the plaintiff cannot recover the amount claimed. *Judon,* 773 F.3d at 503-4 (internal quotations and citations omitted).

In *Judon,* the Court of Appeals reiterated the above, holding:

> Thus, our jurisprudence establishes at least two distinct tests potentially relevant here with regard to removal jurisdiction in a CAFA case, whose application is dependent on the nature of the challenge and the pertinent facts of the case. In summary:
>
> 1. The *McNutt/Samuel-Bassett* framework applies where a challenge to the amount in controversy had been raised in the pleadings or the notice of removal, but "no evidence or findings in the trial court addressed that issue." *Samuel-Bassett*, 357 F.3d at 397; *McNutt*, 298 U.S. at 179–80, 56 S.Ct. 780. We require "the party alleging jurisdiction [to] justify his allegations by a preponderance of the evidence." *McNutt*, 298 U.S. at 189, 56 S.Ct. 780.
>
> 2. The *Red Cab/Samuel-Bassett* framework applies where the jurisdictional facts are not contested and the amount in controversy is "determined in whole or in part" by applicable law. *Samuel-Bassett*, 357 F.3d at 397–98. Here we ask whether it is clear to a legal certainty that the plaintiff cannot recover the amount claimed. *Id*. at 398.

*Id.,* at 504-5.

### III. Legal Analysis

Against this framework, the Court turns to the case before it. The Court notes that the Parties contest the number of putative class members, which has a direct impact on the amount in controversy.[1]

#### A. Plaintiff's Complaint – Factual Allegations

Plaintiff's Complaint defines the class as follows:

> 20. This action is brought as a class action and the Court is requested to certify the following class: (a) all Pennsylvania citizens on the date of the filing of the complaint[2]; (b) who were ANPAC insureds as defined by MVFRL or the applicable ANPAC policy; (c) which ANPAC policy provided that UIM benefits were rejected; (d) for whom ANPAC cannot produce a valid rejection form for UIM coverage as required by Section 1731(c. I) of MVFRL; and (e) who were injured in motor vehicle accidents by an underinsured motorist on or after June 5, 2009.

Doc. no. 1-2, ¶ 20.[3]

Plaintiff's Complaint alleges that the "number of persons who meet the [above] criteria of the proposed class <u>is believed to be</u> less than 100 persons." Id., ¶ 23 (emphasis added). In addition, Plaintiff's Complaint indicates that "the amount in controversy for the class, including attorneys' fees, compensatory and punitive damages, and interest" does <u>not</u> exceed the jurisdictional minimum (in this case, $5,000,000). Id., ¶ 22.

---

[1] The Court notes that there is no dispute concerning diversity of citizenship, and thus, the Court will not address diversity. Rather, the Court assumes there are minimally diversity parties based solely on the allegations set forth by Plaintiff and Defendant in the Complaint and the Notice of Removal, respectively. See doc. no. 1-2, ¶ 1; doc. no. 1.

[2] The Court finds as fact that Plaintiff filed his Complaint in Pennsylvania's Court of Common Pleas of Fayette County on June 8, 2015. See State Court date stamp set forth on p. 2 of doc. no. 1-2.

[3] Defendant asserts that Plaintiff has defined the putative class at least two different ways. See doc. no. 1, ¶ 14; doc. no. 34. Because Defendant bears the burden of proof as to this remand matter, and because Defendant posits that Plaintiff supplied at least two descriptions of the putative class, the Court has chosen to use the most narrow description of the class – the criteria for which Plaintiff set forth in ¶ 20 of his Complaint – so as to construe the facts asserted by both parties in a light most favorable to Plaintiff.

As a result of Plaintiff's allegations in this case, under *Morgan* and *Frederico*, "the proponent of the federal subject matter jurisdiction is held to a higher burden; that is, the proponent of jurisdiction must show, to a legal certainty, that the amount in controversy exceeds the statutory threshold." Thus, Defendant in this case must prove to this Court, to a legal certainty, that the amount in controversy is greater than $5,000,000.

### B. Defendant's Notice of Removal – Factual Allegations

Defendant filed a 21-page Notice of Removal. Doc. no. 1. This removal notice reiterates the class description as set forth by Plaintiff in his Complaint. Id., ¶ 13. The removal notice also indicates that based on the class description provided by Plaintiff in paragraph 20 of the Complaint, the number of class members exceeds 100. Id., ¶ 15. Specifically, the Notice of Removal states:

> According to the business records of American National, there were 119 separate claimants involved in a motor vehicle accident on or after June 5, 2009, each of whom represented themselves as a named insured or an insured under an American National policy for which UIM coverage was rejected using the UIM Form. Each claimant asserted that he or she was not at fault for the accident. The chart attached hereto as Exhibit "B" identifies each claim asserted and the relevant policy number. The information provided in Exhibit "B" establishes that "the number of all proposed plaintiff classes in the aggregate" is <u>not</u> less than 100, thereby meeting this requirement for subject matter jurisdiction under CAFA. 28 U.S.C. § 1332(d)(5)(B).

Id., ¶ 18 (emphasis added).

Exhibit "B," which Defendant attached to the Notice of Removal, is a spreadsheet consisting of 119 names. See doc. no. 1-3. Exhibit B lists the following data for each of the 119 individuals: claimant name, insured name, policy number, year, make and model of vehicle, the policy limits for bodily injury per person, and the policy limits for bodily injury per occurrence.

9

Using the 119 persons set forth in Exhibit "B" and Plaintiff's own definition of the class (set forth in paragraph 20 of the Complaint), Defendant's removal notice indicates that the amount in controversy is $33,315,000 – a sum which is clearly exceeds the $5,000,000 jurisdictional threshold. Doc. no. 1, ¶ 37. Defendant explains that the sum of $33,315,000 is derived by adding the "aggregate UIM benefits equal to the entire bodily injury liability limit for each applicable American National policy and stacking . . . those UIM benefits for each vehicle insured under each applicable American National policy. . . ." Id., ¶ 37.

**C. Plaintiff's Petition for Remand – Evidence and Argument**

In his Petition for Remand, Plaintiff claims that at least two (2) of the 119 individuals Defendant set forth in Exhibit "B" fail to meet the criteria defining the putative class as set forth in paragraph 20 of his Complaint. Specifically, Plaintiff contends that Eugene and Sherrie Watson, the parents of Plaintiff, Justin Watson, have not made any claim for UIM benefits since June 5, 2009. Doc. no. 21, p. 5-6.

Plaintiff supplied affidavits from Eugene and Sherrie Watson in support of his Petition for Remand and in those affidavits, both affiants state "from June 5, 2009 through June 5, 2015" they were involved in one car accident while insured by Defendant and at "no time" did they ever make a claim for underinsured motorist benefits. See doc. no. 20-2, ¶ 3-4; doc. no. 20-3, ¶ 3-4. These affidavits also suggest that at the time of Plaintiff's accident (October 14, 2014), Plaintiff's parents only insured two vehicles with Defendant – not four as Exhibit "B" lists. See doc. no. 20-2, ¶ 6; doc. no. 20-3, ¶ 6; doc. no. 1-3, p. 6; and doc. no. 1-2, p. 9. Plaintiff further contends that given these alleged errors on Exhibit "B," the spreadsheet is "unreliable" and thus, there is no "evidence" upon which this Court can rely to find as fact that there are greater than 100 class members and more than $5,000,000 in controversy.

### D. Defendant's Opposition to Plaintiff's Notice of Removal

In Defendant's Brief in Opposition to Plaintiff's Petition for Remand, Defendant contends that it fully adhered to the criteria established by Plaintiff in paragraph 20 of his Complaint when compiling Exhibit "B." Doc. no. 34, p. 3-4. Defendant further argues its inclusion of Eugene and Sherrie Watson on Exhibit "B" was proper because both individuals made a claim for uninsured motorist coverage stemming from an accident occurring on September 13, 2009. Id., p. 4. In support of the assertion that Eugene and Sherrie Watson made such a claim and thus, were properly included on Exhibit "B," Defendant provided the affidavit of Paula Letterman, "the Director/Litigation for [Defendant]." Doc. no. 34-1, ¶ 2. This affidavit indicates that on September 13, 2009, Eugene Watson was operating his Chevrolet Cobalt (and Sherrie and Justin Watson were passengers in the Cobalt) when the Colbalt was struck from behind by Julie Miller. Id., ¶ 7. All three Watsons Eugene, Sherrie, and Justin) sustained injuries and received medical treatment. Id., ¶ 9.

Paula Letterman's affidavit also states that "[o]n May 28, 2010, attorney for the Plaintiff and his parents (Marianne Miele) sent a letter to the local American National agent" requesting a copy of the rejection of underinsured motorist coverage. Id., ¶ 11; see also, doc. no. 34-3, attached to the affidavit, which is a copy of the May 28, 2010 letter sent by Attorney Miele. Paula Letterman's affidavit indicates that Ms. Miele next wrote to Defendant on June 4, 2010 setting forth her position as to why Defendant's rejection form for underinsured motorist coverage was purportedly invalid under 75 Pa.C.S.A. §1731 and why Defendant should pay the insureds the "underinsured motorist coverage in an amount equal to the policy holder's limits of liability." Id., ¶ 12; see also doc. no. 34-4, which is a copy of the June 4, 2010 letter sent by Attorney Miele.

Finally, the affidavit of Ms. Letterman also indicates that on June 17, 2010, Defendant received a third letter from Attorney Miele, stating (in relevant part), "it is our opinion that your insured's coverage on the subject date of loss included underinsured motorist coverage in an amount equal to the your policy holder's limits of liability." Id., ¶ 13; see also doc. no. 34-5, which is a copy of the June 17, 2010 letter sent by Attorney Miele.

**E. Analysis of the Facts/Evidence and Factual Findings**

Defendant bears the burden of proving that removal to this Court based on CAFA is appropriate. Defendant must meet its burden based upon a legal certainty standard.

Defendant's evidence begins with a list – Exhibit "B" – which sets forth the names of 119 individuals who Defendant claims meet the criteria of Plaintiff's most narrow definition of the putative class – the definition set forth in paragraph 20 of the Complaint. Doc. no. 1-3. Exhibit "B" also indicates that based on the 119 persons listed, the total amount of liability coverage at issue in this case is $33,315,000. Id.

Defendant also supplied this Court with an affidavit from Gary Horsman, a management systems consultant for Defendant. Doc. no. 34-2. Mr. Horsman testified that information set forth on Exhibit "B" was compiled from the Defendant's databases. Id., ¶ 2. Importantly, Mr. Horsman testified that the data set forth on Exhibit "B" was compiled using the following criteria:

> (1) . . . claims under insurance policies issued by American National in Pennsylvania where an insured was involved in a motor vehicle accident on or after June 5, 2009 through the date the Complaint was filed on June 5, 2015;
> (2) where the American National insurance policy included a UIM rejection form similar to the one attached to the Complaint;
> (3) where the insured advised American National that the other driver was at fault for the motor vehicle accident; and

(4) where the insured made a claim for payment to recover for
injuries or damages under the American National policy.

Id., ¶ 3. Mr. Horsman further testified that "[b]ased upon the data compiled, there were 119 claims and claimants who met these criteria as identified in Exhibit "B" attached to the Notice of Removal." Id. He also testified that the "total amount of liability coverage" implicated by stacking the vehicles of the 119 individuals identified on Exhibit "B" was $33,315,000.

The Court finds as fact that the criteria used to compile the data on Exhibit "B" as set forth in Mr. Horsman's affidavit, and in the Notice of Removal, comports with the description of the class criteria supplied by Plaintiff in paragraph 20 of his Complaint. Therefore, the Court finds as fact that Exhibit "B" contains the names of all persons who were Pennsylvania citizens on the date of the filing of the Complaint; who were insureds of Defendant as defined by MVFRL or the applicable insurance policy; which policy provided that UIM benefits were rejected; for whom Defendant cannot purportedly produce a "valid" rejection form for UIM coverage as required by 75 Pa.C.S.A. § 1731(c. I); and who were injured in motor vehicle accidents by an underinsured motorist on or after June 5, 2009.

Defendant's evidence also includes the testimony of Paula Letterman who testified that letters demanding underinsured coverage were sent by Plaintiff's attorney, who was acting on Plaintiff's behalf as well as on behalf of Plaintiff's parents when these demand letters were sent. Doc. no. 34-1. The Court finds as fact, after a review of Ms. Letterman's affidavit as well as the actual letters sent by Ms. Miele – copies of which were attached to Ms. Letterman's affidavit – that Plaintiff's parents did in fact demand underinsured coverage from Defendant. Accordingly, the Court finds as fact that the inclusion of Eugene and Sherrie Watson's names on Exhibit "B" was proper.

Based upon the above findings of fact, the Court concludes that Exhibit "B" is, in fact, a reliable document. As such, the Court finds that there are at least 100 individuals who comprise the putative class per Plaintiff's description, set forth in paragraph 20 of his Complaint. Because paragraph 20 is the most restrictive definition and description of the putative class, the Court has reviewed this matter in a light most favorable to Plaintiff, who has petitioned for remand. The number of putative class members, 119, exceeds the minimum number necessary to assert federal jurisdiction under CAFA.

The Court further finds that the total amount of liability coverage, stacked for each of the 119 insured vehicles identified on Exhibit "B," was correctly calculated to arrive at the sum of $33,315,000. This amount exceeds the $5,000,000 jurisdictional threshold under CAFA.[4]

IV. CONCLUSION

In conclusion, based on the findings of fact set forth above, the number of individuals and the amount in controversy exceeds the statutory minimum under CAFA. The Court further finds that Defendant has proven this to a legal certainty. Based on the foregoing law and analysis Plaintiff's Petition for Remand will be denied. An appropriate Order shall follow.

s/ Arthur J. Schwab<br>
Arthur J. Schwab<br>
United States District Court Judge

---

[4] The Court notes that although Eugene and Sherrie Watson testified that two additional vehicles were erroneously included in Exhibit "B" as insured vehicles, neither of the parties addressed this matter in their respective legal briefing. The Court finds as fact that even if only two of the four Watson vehicles should have been included on Exhibit "B," the impact of two additional vehicles with a $25,000 bodily injury per person limit would not diminish the overall value of putative class action so as to decrease the amount in controversy below $5,000,000.